## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MINOR M. SCOTT III, as personal | ) | |
| Representative for the Estate of MAUREEN | ) | |
| K. SCOTT, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09-CV-6858 |
| | ) | |
| v. | ) | Judge Ronald Guzman |
| | ) | |
| CHUHAK & TECSON, PC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Defendants Chuhak & Tecson, P.C., Stephen M. Margolin and David B. Shiner (collectively "C&T"), by their attorneys Michael J. Flaherty and C. Corey S. Berman, hereby tender their Memorandum in Support of Motion for Summary Judgment.

### ARGUMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "Summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Commercial Underwriters Ins. Co. v. Aires Envtl. Services, Ltd.*, 259 F.3d 792, 795 (7*th* Cir. 2001). No rational trier of fact could find in favor of Plaintiff Minor M. Scott, as personal Representative of the Estate of Maureen K. Scott, deceased ("Plaintiff") because Plaintiff cannot prove any element of his claim.

## I. PLAINTIFF'S CLAIM IS FOR PROFESSIONAL NEGLIGENCE.

Despite its labeling, Plaintiff's claim is for legal malpractice, not breach of fiduciary duty. The Illinois Supreme Court addressed the issue of recasting a professional negligence claim as a

breach of fiduciary duty claim in *Neade v. Portes, 739 N.E.2d 496 (Ill. 2000)*. Citing the Appellate Court's holding in *Majumdar v. Lurie, 653 N.E.2d 915 (Ill. App. 1995),* the *Neade* Court noted that "where a claim for legal malpractice and a claim for breach of fiduciary duty are based on the same operative facts and result in the same injury to the plaintiff, the breach of fiduciary duty claim should be dismissed as duplicative." *Neade, 739 N.E.2d at 500-01.*

A complaint does not need to contain a malpractice claim in order for the breach of fiduciary duty claim to be dismissed. "Courts in other jurisdictions have dismissed claims for breach of fiduciary duty when those claims are duplicative of medical negligence claims. Such claims for breach of fiduciary duty have also been dismissed where they constitute an impermissible recasting of a medical negligence claim, even though plaintiff's complaint did not include a medical negligence claim." *Id. at 501* (citing with approval *D.A.B. v. Brown, 570 N.W.2d 168 (Minn. App. 1997)* (plaintiff may not avoid statutes of limitations and the requirement of proving actual injury by recasting claim).

As this Court recognized when it in part granted Defendants' Motion to Dismiss on July 9, 2010, Plaintiff's claim in this case is for legal malpractice. Even assuming a fiduciary relationship between C&T and Maureen K. Scott ("Maureen"), which Defendants do not concede, Plaintiff does not allege any sort of selfish benefit to C&T; Plaintiff does not allege any sort of infidelity to Maureen; and Plaintiff does not allege any dishonesty. *See Ball v. Kotter, 2010 WL 4192723 (N.D. Ill. October 18, 2010) (Dow, J.)* ("A fiduciary relationship imposes a general duty on the fiduciary to refrain from 'seeking a selfish benefit during the relationship'") (citing *Kurtz v. Solomon, 656 N.E.2d 184, 191 (Ill. 1995)*); *Metrick v. Chatz, 639 N.E.2d 198, 203 (Ill. App. 1994)* (affirming dismissal of breach of fiduciary duty claim against attorney because no facts distinguished the breach of fiduciary duty claim from a negligence claim); *Doe v. Roe, 681 N.E.2d 640, 649 (Ill. App. 1997)*; *Owens v. McDermott, Will & Emery, 736 N.E.2d 1145 (Ill. App. 2000)*.

Applying that reasoning, this Court struck Plaintiff's prayer for punitive damages in his original Complaint when the Court granted in part Defendants' Motion to Dismiss. Rejecting Plaintiff's argument that his claims were for breach of fiduciary duty, the Court held that "[t]he only alleged source of defendants' duty to tell Maureen about the Milton Grantor and Maureen Separate Trusts, is defendants' attorney-client relationship with her. Thus, regardless of how they are styled, plaintiff's remaining claims 'fall under the rubric' of legal malpractice." *(Doc. 37 at 7)*. Plaintiff did not change his pleading in any significant respect when he filed his Amended Complaint on July 23, 2010. "A court ought not to revisit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants reexamination." *Minch v. City of Chicago, 486 F.3d 294, 301 (7th Cir. 2001)*. "The law of the case doctrine advises against a court reopening previously decided issues." *Moriarty v. Svec, 429 F.3d 710, 722 (7th Cir. 2005)*. The Court's ruling applies with equal force to Plaintiff's Amended Complaint.

## II. PLAINTIFF'S LEGAL MALPRACTICE CLAIM FAILS FOR LACK OF AN APPROPRIATE EXPERT OPINION.

### A. Plaintiff Has Failed To Provide An Expert Opinion To Establish A Breach Of The Standard Of Care.

"Attorneys are liable to their clients for damages in malpractice actions only when they fail to exercise a reasonable degree of care and skill." *Barth v. Reagan, 564 N.E.2d 1196, 1199 (Ill. 1990)*. "Failure to present expert testimony is usually fatal to a plaintiff's legal malpractice action." *Id. at 1200*. "The standard recognizes that lay jurors are not equipped to determine what constitutes reasonable care in professional conduct without measuring the actor's conduct against that of other professionals." *Advincula v. United Blood Services, 678 N.E.2d 1009 (Ill. 1996)*.[1]

---

[1] An exception to the requirement for expert testimony exists when a lay person would be able to recognize negligence based on obvious facts, such as the failure to file a claim with the applicable statute of limitations. *Barth, 546 N.E.2d at 1201; see also Gray v. Hallett, 525 N.E.2d 89, 91 (Ill. App. 1988)* (failure to obtain timely service of process). The exception does not apply in this case involving trust interpretations and Plaintiff's criticisms of the nature of the communications between C&T to Maureen Scott, including the alleged effects thereof.

Plaintiff did not disclose any sort of expert in probate law. Robert A. Merrick, Jr., Plaintiff's single disclosed expert, is an attorney whose practice has been in areas of professional responsibility. *See Plaintiff's Rule 26(a)(2)(B) Report, attached hereto as Exhibit 1.* Mr. Merrick does not attempt to offer any opinions about will or trust interpretation or standards pertaining to communications between attorneys and trust beneficiaries. In contrast, Defendants disclosed opinions tendered by estate planning and trust administration attorney Eileen B. Trost, partner at Freeborn & Peters LLP, who opined in great detail as to, among other things, the standards for communications between attorneys and trust beneficiaries, whether those standards had been breached in this case, and opined as to Maureen's rights, if any, under the relevant trusts. *See Defendants' Rule 26(a)(2)(B) Report, attached hereto as Exhibit 2.* Ms. Trost's opinions are addressed in more detail below. Plaintiff's deficient expert disclosure is fatal to his claim.

### 1. Defendants are entitled to summary judgment on any and all alleged substantive trust-related malpractice.

"To survive summary judgment, [a plaintiff must] produce evidence permitting a reasonable trier of fact to find all of the elements of a negligence claim under Illinois law – duty, breach of duty and causation." *Clifford v. Crop Production Services, Inc., 2010 WL 4812817 at *3 (7th Cir. Nov. 29, 2010).* To sustain a legal malpractice claim, plaintiffs must prove the existence of an attorney-client relationship, a breach of duty arising from that relationship, causation and damages. *Goran v. Glieberman, 659 N.E.2d 56 (Ill. App. Ct. 1995).* Plaintiff alleges at ¶ 69 of his Amended Complaint[2] *(Doc. 38)* that C&T committed the following acts or omissions of substantive trust-related negligence:

b.   failing to create the Maureen Separate Trust and advise her about rights and benefits thereunder;

c.   failing to cause any distributions to Maureen of either income or principal from the Milton Grantor Trust or the Maureen Separate Trust which should have been

---

[2] All references herein to ¶ 69 are to ¶ 69 of the Amended Complaint *(Doc. 38).*

established by [Defendants] which would have benefitted her in respect to LoDo Self-Storage and paid Maureen's medical bills;

e.   failing to have any tax returns filed on behalf of the Maureen Separate Trust for the years 2005, 2006 and 2007 to further conceal its existence or non-existence;

j.   failing to cause any distributions for either income or principal to Maureen from the First Ruth Wealth Trust for, among other things, capital for LoDo Self Storage and Maureen's medical bills;

k.   failing to cause any distributions for either income or principal to Maureen from the Second Ruth Wealth Trust for, among other things, capital for LoDo Self Storage and Maureen's medical bills; and

m.   failing to make any distributions for either income or principal to Maureen from the Ruth Grantor Trust for, among other things, capital for LoDo Self Storage and Maureen's medical bills.

Plaintiff does not offer a single expert opinion supporting any of the above allegations. Whether Defendants breached the applicable standard of care by failing to create the Maureen Separate Trust; failing to make or cause distributions to be made from any of the relevant Trusts; or failing to file tax returns on behalf of the Maureen Separate Trust are not obvious matters on which lay persons have experience sufficient to render a judgment as to the attorneys' conduct. Even without regard to the sufficiency of Mr Merrick's opinions on other matters, Merrick is not qualified to provide, and does not provide, any opinions as to any substantive trust-related matters. *See Exhibit 1.*  Thus, Plaintiff has not established the duty or breach of duty elements of his claim.

Notwithstanding Plaintiff's lack of expert opinion, Defendants' expert affirmatively opines that Defendants did not deviate from the standard of care with respect to any of the distributions that Plaintiff claims should have been made from any relevant Trust *(Exhibit 2 at 13-15)*. Moreover, Ms. Trost opines that Defendants did not deviate from the standard of care with respect to the creation of the Maureen Separate Trust, discussed more fully below.  *(Id. at 15-18)*.

Because Plaintiff does not offer any expert opinions as to any of the above issues, no genuine issue of material fact exists.  The Court must enter summary judgment on the above

claims. *Ball v. Kotter, 2010 WL 4192723 at * 8 (N.D. Ill. October 18, 2010)* (citing *Shanley v. Barnett, 523 N.E.2d 60, 64 (Ill. App. 1988)* ("When a plaintiff in a legal malpractice action cannot obtain expert testimony to establish negligence, summary judgment is appropriate").

> **2.      Defendants are entitled to summary judgment on any and all alleged communications malpractice.**

Plaintiff's remaining claims address C&T's alleged lack of communication with Maureen. As with the substantive Trust-related allegations, these allegations also fail. Plaintiff alleges at ¶ 69 that Defendants committed the following communications-related acts or omissions:

a.      failing to advise Maureen of the existence of the Milton Grantor Trust;

d.      failing to notify Maureen of her right to be appointed as trustee of the Maureen Separate Trust;

f.      failing to advise Maureen of her Power of Appointment pursuant to the purported Maureen Separate Trust;

g.      failing to advise Maureen as to the distributions to be made from the Kiver Family Limited Partnership, the Non-GST Family Trust and Ruth Kiver individually;

h.      failing to advise Maureen of her right to serve as Co-Trustee of the First Ruth Wealth Trust;

i.      failing to advise Maureen of her right to appoint a successor trustee of the First Ruth Wealth Trust; and

l.      failing to advise Maureen of the existence of the Ruth Grantor Trust or her rights and benefits thereunder.

"Of course attorneys have an obligation to communicate with their clients such that they can make informed and intelligent decisions. However, Illinois law is clear that expert testimony is needed to guide a jury through contours of that obligation." *Ball v. Kotter, 2010 WL 4192723 at *10 (N.D. Ill. October 18, 2010)*. Judge Dow looked to the *Barth* opinion for guidance on what type of expert testimony would be required for communication-related issues. The Court ruled that a jury would need an expert's testimony on the standard of care for communications in the particular context to determine whether the e-mails in the *Ball* case satisfied the attorney's

6

obligation to communicate with the client. Judge Dow also noted that when an attorney communicates with the client's husband, an expert would be required to provide an opinion as to whether those communications satisfied the attorney's obligations to the client. *Id. at * 11.*

Plaintiff's tendered opinions cannot sustain Plaintiff's burden on summary judgment because the tendered opinions do not comply with Fed. R. Civ. P. 26(a)(2)(B). Defendants have filed a Motion to Strike Report and Bar Opinion Testimony of Robert Merrick, Jr., which motion Defendants incorporate by reference herein. The Motion to Strike is based on Plaintiff's purported expert having rendered conclusions relying primarily on the allegations in the Amended Complaint rather than on actual facts, and on Plaintiff's expert having utterly failed to provide any bases for his opinions. If the Court grants Defendants' Motion to Strike, as it should, Plaintiff will have no expert testimony to support his communications-related claims. Without expert testimony, Plaintiff cannot establish the relevant standard of care or that Defendants breached the standard of care. *Barth v. Reagan, 564 N.E.2d 1196, 1199 (Ill. 1990).* Summary judgment must be entered against Plaintiff for his failure to establish liability through expert testimony.

**B.** **The Undisputed Facts Establish That Defendants Advised Maureen Scott Of The Existence And Significant Features Of Each Trust Almost Two Years Before Maureen Died.**

Even if Plaintiff had tendered a proper expert opinion regarding the communication-related claims, the undisputed facts require judgment to be entered against Plaintiff on those claims. Contrary to virtually everything that Minor Scott ("Minor") has alleged in this case, Minor admitted at his deposition that he and Maureen knew about the Trusts *almost 2 years before Maureen died*. Minor conceded at his deposition that at a multiple hour Q & A family meeting on August 16, 2005, he and Maureen received and went through a chart prepared by Defendants entitled "KIVER – SUMMARY OF THE ESTATE PLAN AS OF JULY 2005" ("the Chart"). In the Chart, Defendants specifically identified every single trust in the Kiver Estate Plan, including

7

the Milton Grantor Trust and all of the other Trusts that Plaintiff alleged were never disclosed. Minor admitted that he and Maureen took the Chart home; that he put the Chart in his files; and that he did not look at it again until after Maureen passed away. *(Deposition of Minor M. Scott, III at 67, 105, 176-180, 183-184, 201-202, 246-247, 265, 316; pages attached hereto as Exhibit 3).*

The Chart that Minor now admits that he and Maureen received on August 16, 2005, almost 2 years before her death, is attached hereto as *Exhibit 4.* Pages 5-6 of the Chart show that contrary to the allegation at ¶ 69a, the Scotts were advised of the existence of and significant features of the Milton S. Kiver Grantor Trust well before Maureen's death. Page 17 of the Chart shows that contrary to the allegation at ¶ 69g, the Scotts were advised of the existence of and ownership percentages in the Kiver Family Limited Partnership, with the Milton S. Kiver Grantor Trust and the Ruth Ann Kiver Grantor Trust both being 49.5% limited partners and Milruth Corp. being a general partner holding a 1% interest. Page 11 of the Chart shows that contrary to the allegation at ¶ 69g, the Scotts knew of the GST Exempt Trust and its distribution features. Page 7 of the Chart shows that contrary to the allegation at ¶ 69l, the Scotts were advised of the existence and significant features of the Ruth Ann Kiver Grantor Trust. Page 18 of the Chart shows that the Scotts knew of the existence of and shareholders in Milruth Corp.

Minor concedes that he and Maureen were also made aware of the existence and significant features of the First Ruth Wealth Trust (¶ 69h and i) when they received the Chart in or about July 2005. Page 14 of the Chart shows that the current trustee was Milton S. Kiver and that the successor trustees were Diane K. Shah and Maureen S. Scott, as co-trustees. These facts, too, directly contradict Plaintiff's allegations that Defendants withheld information from Maureen.

Thus, by July or August 2005, the Scotts had been made fully aware of the significant features of (and Maureen's rights under, if any) the Milton S. Kiver Grantor Trust, the Ruth Ann Kiver Grantor Trust, the Wealth Trusts, Milruth Corp. and the Kiver Family Limited Partnership.

Plaintiff cannot establish liability for any alleged non-disclosure with respect to his claims in ¶ 69a (involving Milton S. Kiver Grantor Trust); ¶69g (involving Kiver Family Limited Partnership and GST Exempt Trust); ¶ 69h and i (involving First Ruth Wealth Trust); or ¶ 69l (involving Ruth Ann Kiver Grantor Trust). Ms. Trost affirmatively opined that Defendants' disclosures "satisfied any duties they, or any of them, may have owed to Maureen with respect to the disclosure of information to her about her rights under the Kiver Trusts, in a manner consistent with the applicable standards of care for members of the legal profession in Illinois." *(Exhibit 2 at 8)*.

No genuine issue of fact exists. Ms. Trost opines that the disclosures complied at all times with the applicable standard of care. *(Exhibit 2 at 8-13)*. Other than 2 letters, Plaintiff's expert did not look at any documents or read deposition testimony, and offers only unsupportable conclusory opinions. *(Exhibit 1 at 1-3)*. Because the undisputed facts, including Minor's admissions, establish that Plaintiff cannot prevail on any claim that: i) Defendants did not disclose the existence or provisions of the above Trusts to Maureen; or ii) that Defendants' disclosures did not comply with the applicable standard of care, summary judgment must be granted.

## III.  PLAINTIFF CANNOT ESTABLISH LIABILITY WITH RESPECT TO THE MAUREEN SEPARATE TRUST.

Plaintiff's two remaining allegations of non-disclosure go to the issue of the so-called Maureen Separate Trust. Plaintiff alleges at ¶ 69d and f that Defendants failed to advise Maureen of her right to be appointed as trustee of the Maureen Separate Trust (¶ 69d) and that they failed to advise her of her power of appointment under the Separate Trust (¶ 69f). Page 5 of the Chart shows that Maureen and Minor learned in 2005 that at some point after Milton S. Kiver's death, the Milton S. Kiver Grantor Trust would be divided into separate trusts for the benefit of each of the Grantor's children. *(Exhibit 4 at 5)*. Page 5 of the Chart also disclosed that "all beneficiaries upon attaining the age of thirty (30) shall be the trustee of his or her trust." Since Minor admits that he and Maureen received the Chart and had the opportunity to review it and ask questions

about it on August 16, 2005, Plaintiff cannot prevail on his allegation that Defendants failed to notify Maureen of her right to be appointed as trustee of the Maureen Separate Trust.

Minor's allegation at ¶ 69f similarly fails because he and Maureen apparently failed to read page 6 of the Chart when they received it. Page 6 of the Chart revealed that § 7.2 of the Milton S. Kiver Grantor Trust contained a provision pursuant to which each beneficiary may direct the remainder of her Separate Trust to any of her heirs, descendants of the Grantors or charitable institutions.[3] Thus, Maureen knew or should have known if she read the Chart that she possessed a power of appointment for over assets remaining in her Separate Trust. Plaintiff cannot establish as a matter of fact or law that Defendants breached any duty of disclosure to Maureen.

## IV. PLAINTIFF CANNOT PREVAIL ON THE ELEMENTS OF CAUSATION OR DAMAGES.

Even if the Court does not strike Mr. Merrick's opinions, which it should, his limited opinions do not provide any evidence from which a jury could find causation, *i.e.,* could Defendants' alleged lack of communication have caused Maureen Scott to incur damages based on the provisions of the Trust documents? Mr. Merrick offers no opinions on causation other than a generalized conclusory statement that "Maureen Scott could have taken action to protect her rights and interests." *(Exhibit 1, Merrick Letter at Page 3).* Such conclusion does not comply with Fed. R. Civ. P. 26(a)(2)(B). *Salgado v. General Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 2008).*

Defendants' expert Eileen Trost, on the other hand, establishes with great detail in her report that the Estate cannot establish the element of causation because: i) the trust provisions do not give Maureen Scott the rights that her Estate claims; and ii) Maureen could not have altered her position even if more communications had existed.

---

[3] Ms. Trost points out in her opinion that the draft Will that Defendants sent Maureen in 2006 "clearly stated that it was not exercising any powers of appointment that Maureen had . . . The record reviewed reflects that Maureen's 2007 Will did not exercise her power of appointment over her share of the Milton S. Kiver Grantor Trust because she never gave the Defendants any indication she wanted to do so. *(Exhibit 2 at 28).*

A.     **No Facts Exist That Would Allow The Estate Any Relief Pertaining To The Maureen Separate Trust.**

Plaintiff's claim that the Estate was damaged because the Maureen Separate Trust was not created or funded must fail. Even if Maureen had a right to receive a distribution under the Milton S. Kiver Grantor Trust through the creation and funding of a Maureen Separate Trust after Milton S. Kiver's death on July 21, 2005, it is undisputed that Plaintiff has not disclosed an opinion whereby any expert faults Defendants for not actually creating and funding Maureen's Separate Trust until the Internal Revenue Service provided an estate tax closing letter with respect to the Estate of Milton S. Kiver, which letter did not come until May 23, 2007, after Maureen's death. Accusations and insinuations aside, Plaintiff cannot establish a breach of the standard of care, *i.e.,* liability, without an expert opinion. *Barth v. Reagan, 564 N.E.2d 1196, 1199-1200 (Ill. 1990).*

Defendants have established that they did not breach the standard of care. Ms. Trost opines in her Report at Pages 15-18 that Defendants acted reasonably in not causing the Separate Trusts to be actually created and funded until the IRS determined after reviewing the Milton S. Kiver estate tax return that no additional estate taxes were due. Milton S. Kiver died on July 21, 2005; and the IRS accepted the final estate tax return on May 23, 2007. Ms. Trost opines that "the delay in creating and funding Maureen's separate share of the Milton S. Kiver Grantor Trust and the Family Trusts under the Milton S. Kiver Living Trust until after the decedent's federal estate tax return was accepted by the Internal Revenue Service is a reasonable period of the post death administration of the trusts under the facts and circumstances of this case." *(Exhibit 2 at 18).* Unfortunately, Maureen died on March 23, 2007, two months before the IRS accepted the federal estate tax return, so her Separate Trust was not yet created or funded. However, the undisputed facts establish that the Defendants did not breach any standard of care with respect to the timing.

Because no deviation from the standard of care existed with respect to the non-funding of the Separate Trust prior to Maureen's death, Maureen's alleged lack of knowledge regarding her

Power of Appointment under the Separate Trust could not cause the Estate any damages. Pursuant to Section 7.2 of the Milton S. Kiver Grantor Trust *(Exhibit 6 hereto)*, upon Maureen's death, the share of assets that would have funded the Maureen Separate Trust was instead automatically divided into separate trusts for the benefit of Maureen's two children, Rebecca and Samuel. Maureen's Estate never received, and could never have received because of Maureen's death, any assets over which she could exercise a power of appointment. Plaintiff can never satisfy the elements of breach of duty or causation with respect to the Maureen Separate Trust allegation.

**B.      Maureen Did Not Have An Absolute Right To Distributions Under Any Other Trust.**

Even if Maureen did not know about the other Trusts, which claim has been disproved by the evidence showing that Maureen received full information about the Trusts, including financial statements no later than August 16, 2005[4], Plaintiff provides no expert opinion (and cannot provide any) that would support any claim that Plaintiff was damaged as a result of any lack of communication. To the contrary, the uncontradicted opinion of Ms. Trost establishes that Maureen did not have an absolute right to distributions under any of the other Trusts.

Ms. Trost explains that Maureen had a "shared discretionary right to receive distributions on an ascertainable standard" from certain of the Trusts. Ms. Trost explains that Diane K. Shah, the trustee of those Trusts *could if she considered it necessary or advisable,* make distributions to Maureen but that the trustee was not obligated to make distributions because Maureen did not have an absolute right to distributions.[5] *(Exhibit 2 at 4-8).* Ms. Trost also explains that Maureen has no rights or interest in the Marital Trust during the lifetime of her mother, Ruth A. Kiver.

---

[4] In addition to conceding that he and Maureen received the Chart on August 16, 2005, Minor testified that Ruth Kiver "basically opened up the books. She let money be discussed and the actual amounts. She said we could have anything we wanted, and we got all the financial statements from the various institutions that were holding money." *(Exhibit 3 at 316/4-14).*

[5] Plaintiff filed a separate lawsuit against the trustee arising from an alleged failure to make distributions, captioned *Minor M. Scott III v. Shah,* No. 09 CH 38003 (Circuit Court of Cook County, Illinois). That suit remains pending.

Plaintiff cannot establish that any of Defendants' acts or omissions proximately caused Maureen or her Estate any harm from any lack of distributions.

## V.     THE ILLINOIS STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIM.

A federal court sitting in diversity must follow the statute of limitations of its forum state. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704-05 (7th Cir. 2004). Illinois considers statutes of limitations procedural for choice-of-law purposes. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 770 N.E.2d 177, 194 (2002). Thus, an Illinois court would apply the Illinois statute of limitations and a federal court sitting in Illinois must do the same.[6]

The Illinois statute of limitations applicable to all claims against attorneys, 735 ILCS 5/13-214.3 (West 2010), provides, in pertinent part, as follows:

> (b) An action for damages based on tort, contract or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

Plaintiff claims that an injury occurred during Maureen lifetime as an alleged result of Maureen's failure to learn of Trust provisions or receive distributions from the trustee. The undisputed facts establish that Maureen knew or should have known about the Trusts and their provisions, including rights of discretionary distributions from the trustee, no later than August 16, 2005, the date of the family meeting. Maureen knew prior to her death in March 2007 that she had not received any distributions. The undisputed facts also establish that Minor thought he had a cause of action against Defendants no later than March 2007 inasmuch as he admitted at his deposition that he began talking to attorneys, including Ronald Boorstein, about a possible claim

---

[6] The language of the statute and Illinois case law establish that it does not matter whether a claim is labeled as being brought in contract, tort or otherwise. *See 735 ILCS 5/13-214.3(a)* (barring "any action for damages based on tort, contract, or otherwise . . . against an attorney"); *Collins v. Reynard, 607 N.E.2d 1185 (1993)* (cause of action for professional malfeasance may sound in either tort or contract); *Nettleton v. Stogsdill, 899 N.E.2d 1252 (Ill. App. 2008)* (breach of fiduciary duty claim same as negligence claim).

against Defendants at that time.  Plaintiff did not file this action until November 2009.   The Court

must find that the 2 year limitations period expired before Plaintiff filed suit.

To the extent that any injury to the Estate occurred as of the date of Maureen's death, such

claim is also time-barred.  Section 214.3(d) provides as follows:

> (d) When the injury caused by the act or omission does not occur until the death of
> the person for whom the professional services were rendered, the action may be
> commenced within 2 years after the date of the person's death *unless letters of office
> are issued or the person's will is admitted to probate within that 2 year period, in
> which case the action must be commenced within the time for filing claims against the
> estate or a petition contesting the validity of the will of the deceased person, whichever
> is later, as provided in the Probate Act of 1975.*

735 ILCS 5/13-214.3 (West 1994) (emphasis added).[7]

The Probate Court issued letters of office within 2 years of Maureen's death (date of

Maureen's death: March 23, 2007; date of Letters Testamentary: April 19, 2007).   Pursuant to

subsection (d), an action had to have been filed within the time for filing a claim against the estate

or a petition contesting the validity of a will pursuant to the Illinois Probate Act of 1975.

*Wackrow v. Niemi, 899 N.E.2d 273, 277 (2008)* (citing *Petersen v. Wallach, 764 N.E.2d 19

(2002))*.[8]   The statutory bar is a repose period, not a limitations period subject to tolling.

*Wackrow*, 899 N.E.2d at 279 (citing *Poulette v. Silverstein, 767 N.E.2d 477 (Ill. App. 2002)*.

The Court may take judicial notice of matters of public record.  *Opoka v. Immigration and

Naturalization Service, 94 F.3d 392, 394 (7th Cir. 1996)*.  The Estate's Probate file establishes as a

matter of indisputable fact that Maureen's Will was admitted to probate on April 16, 2007.  Under

---

[7] Although the statute was amended in 1995 by Public Act 89-7 (Pub. Act 89--7, §15, eff. March 9, 1995), that act was held unconstitutional in *Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997)* and was never rewritten.  Thus, the statute reverted to its previous content, recited above.  *Wackrow v. Niemi, 231 Ill. 2d 418, 423 n.3 (2008)*.

[8] The Illinois statute of limitations expressly applies the limitations periods contained in the Illinois Probate Act of 1975 without regard to where the Estate might have been opened.  The Court should not guess at legislative intent but must apply the clear language of the statute.  *Hibma v. Odegaard, 769 F.2d 1147, 1151 (7th Cir. 1985)* (refusing to twist clear language of statute); *Kaufman v. Cserny, 856 F. Supp. 1307, 1312 (S.D. Ill. 1994)* (refusing to guess at Congressional intent given clear language of statute).  It is irrelevant that Maureen's Estate was opened in Colorado.  The relevant statute of limitations does not refer to any other state's laws.

the Illinois Probate Act, "a petition contesting the validity of a will must be filed within six months of its admission to probate." *Wackrow, 231 Ill. 2d at 277; 755 ILCS 5/8-1(a) (1994).* Applying the 6 month limitations period in the Illinois Probate Act, petitions contesting the validity of the will were to be filed by October 16, 2007.

The Probate file also establishes that claims against the Estate were required to have been filed by October 10, 2007. The Illinois statute of limitations and repose for all types of claims against attorneys provides that the Estate was required to file this action "within the time for filing claims against the Estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975." 735 ILCS 13-214.3(d). The indisputable facts establish that under the Illinois Probate Act of 1975, the filing deadline for claims against the Estate was October 10, 2007 and the filing deadline for petitions contesting the validity of Maureen's will was October 16, 2007. This action had to have been filed by October 16, 2007, the later of the two dates. The Estate filed this action on November 2, 2009, more than two years after its claim expired. Thus, the Estate's action arising from any injury that occurred after Maureen's death is barred pursuant to the statute of repose.

## CONCLUSION

The undisputed facts establish that Plaintiff cannot establish, and could never establish, a duty, a breach of duty, causation or damages on any part of his claim. Plaintiff does not offer an appropriate expert opinion; Plaintiff instead offers an expert who relies on nothing but Plaintiff's false allegations; and Plaintiff's own admissions defeat his allegations that he and Maureen Scott did not know about the Trusts. Because no genuine issue of material fact exist and because Defendants are entitled to judgment as a matter of law, the Court should enter summary judgment in Defendants' favor and against Plaintiff, and award such other relief as the Court deems just and appropriate, including but not limited to entertaining the possibility of Rule 11 sanctions.

CHUHAK & TECSON, PC, STEPHEN M.
MARGOLIN and DAVID B. SHINER


By:    /s/ C. Corey S. Berman
One of the attorneys for Defendants

Michael J. Flaherty, Esq. (ARDC #6187147)
C. Corey S. Berman, Esq. (ARDC #6203763)
Flaherty & Youngerman, P.C.
134 N. LaSalle Street, Suite 1600
Chicago, IL  60602
312-782-4700