UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MINOR M. SCOTT III, as personal representative for the Estate of Maureen K. Scott, deceased <br><br> Plaintiff, <br><br> v. <br><br><br><br> CHUHAK & TECSON, P.C., ET AL <br><br> Defendants. | ) ) ) ) ) ) Case No. 09 C 6858 ) ) Judge Ronald A. Guzman ) ) Magistrate Judge ) Arlander Keys ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Mr. Minor M. Scott, III represents the estate of his
deceased wife, Maureen K. Scott.  Because he believes that acts
and omissions by Defendants Chuhak & Tecson, P.C., Stephen M.
Margolin, and David B. Shiner (collectively "Defendants") damaged
the estate, Mr. Scott brought the instant litigation; he alleges
violations of the Illinois Trusts and Trustees Act, 760 ILL.
COMP. STAT. 5/1 et seq (2011), and breach of fiduciary duty.  The
Court must decide Plaintiff's Motion to Compel Defendants to
Answer Completely Interrogatory #5 of Plaintiff's First Set of
Interrogatories and to Produce Materials Requested Under
Paragraphs 30, 31, 32, 33, 34, 35, 36, 37, 38, 44, 45, 46, 47,
48, 50, 57, 59 and 60 of Plaintiff's First Request to Produce.
For the reasons set forth below, the motion is granted in part
and denied in part.

## Background

The factual and procedural history of this case may be traced through the following decision, *Scott v. Chuhak & Tecson, P.C.*, No. 09 C 6858, 2010 WL 2788174, at *1-2 (N.D. Ill. July 9, 2010). Consequently, neither will be outlined here. Instead, the Court moves directly to address the legal issues presented by the pending motion.

## Discussion

The federal discovery rules permit liberal discovery in an effort to facilitate trial preparation or settlement of legal disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Indeed, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" even if the relevant information is not admissible at trial. Fed. R. Civ. P. 26(b)(1). In this instance, however, the discovery must "appear[] reasonably calculated to lead to the discovery of admissible evidence." *Id.* "[T]he burden is upon the objecting party to show why a discovery request is improper." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)(citing *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001)). If the party fails to make the requisite showing, Federal Rule of Civil Procedure 37 allows the Court to enter an order compelling the party to comply with discovery requests.

Mr. Scott requests that Defendants be ordered to fully respond to Interrogatory Number 5 of Plaintiff's First Set of Interrogatories. Additionally, he asks that Defendants be required to produce all documents responsive to requests 30, 31, 32, 33, 34, 35, 36, 37, 38, 44, 45, 46, 47, 48, 50, 57, 59, and 60 of Plaintiff's First Request for Production of Documents and Things to Chuchak [sic] & Tecson, P.C., Stephen M. Margolin, and David B. Shiner, Pursuant to Federal Rule of Civil Procedure 34. Finally, Mr. Scott seeks billing statements for services provided by Defendants and access to the metadata found on their computers. The Court addresses each in turn.

## A.     Plaintiff's First Set of Interrogatories

Plaintiff argues that Defendants failed to properly respond to interrogatory number 5. Defendants, not surprisingly, maintain that their response is sufficient. Additionally, they assert that their objection to the remainder of the request is proper because the information sought is irrelevant to the litigation. The Court, with some limitations, agrees.

In interrogatory number 5, Plaintiff asked Defendants to "[i]dentify every distribution made by [Chuhak & Tecson] to Diane [the trustee] from any of the Five Trusts and for each distribution listed, identify the trust that made the distribution and the amount of the distribution." Though they indicated that no distributions were made to Diane from any of

the trusts prior to Maureen's death, Defendants took issue with having to disclose any information regarding distributions made subsequent to her passing. They did indicate, however, that after Maureen's death, subtrusts were created from the Milton S. Kiver Grantor Trust and distributions made. Discussion of Plaintiff's request in the context of each of the five trusts at issue follows.

1. *Ruth Ann Kiver Wealth Trust I and Ruth Ann Kiver Wealth Trust II*

The relevant portions of the Ruth Ann Kiver Wealth Trust I (Wealth Trust I)[1] and Ruth Ann Kiver Wealth Trust II (Wealth Trust II)[2] are similar and, therefore, will be discussed collectively. Both provide that the following shall occur during Ruth Ann Kiver's life:

> Distribution of Income. The trustee may apply to the payment of premiums on any life insurance policy forming a part of the trust estate such portions or all of the income of the trust estate as the trustee from time to time deems to be advisable. The trustee may also distribute to or use for the benefit of [Ruth Ann Kiver's] husband and such of [Ruth Ann Kiver's] descendants as shall be living from time to time, in equal or unequal amounts, such portions or all of the income from the trust estate as the trustee from time to time deems necessary or advisable for their respective education, health, maintenance and support. Any such income which is not so used or distributed by the trustee shall be accumulated and added to the principal of the

---

[1]  The Ruth Ann Kiver Wealth Trust I is the agreement made as of July 11, 1995.

[2]  The Ruth Ann Kiver Wealth Trust II is the agreement dated October 28, 2002.

trust estate at such time or times as the trustee deems advisable.

Discretionary Distributions of Principal. The trustee may apply to the payment of premiums on any life insurance policy forming a part of the trust estate such portions or all of the principal of the trust estate as the trustee from time to time deems to be advisable. The trustee may distribute to or use for the benefit of [Ruth Ann Kiver's] husband and such of [Ruth Ann Kiver's] descendants as shall be living from time to time, in equal or unequal amounts, such portions or all of the remaining principal or [sic] the trust estate, including any insurance policy forming a part of the trust estate, as the trustee from time to time deems to be necessary or advisable for their respective education, health, maintenance and support.

Rights of Withdrawal of Principal. Any then living child of [Ruth Ann Kiver], any spouse of a then living child of [Ruth Ann Kiver], and any then living descendent of [Ruth Ann Kiver], shall have the right, during the calendar year during which this Agreement is executed and each succeeding calendar year during the lifetime of [Ruth Ann Kiver], to withdraw from the trust estate portions of contributions made to the trust estate during that calendar year, in accordance with the provisions hereinafter set forth. By granting these withdrawal rights, [Ruth Ann Kiver] intends that contributions to the trust shall qualify for the federal gift tax annual exclusion as gifts of present interest, and that the federal gift tax consequences to any holder of a power of withdrawal be minimized.

Mr. Scott maintains that he requires the information sought by interrogatory number 5 to support his allegations that Maureen could have accessed the trusts' funds during her lifetime. Defendants challenge Maureen's entitlement by steadfastly maintaining that neither trust granted her absolute distribution rights. Rather, they contend that Wealth Trust I is "only for insurance policy payment purposes," and, as such, the co-trustees

(of which Maureen was one) and now the trustee (Diane) has authority to pay insurance premiums from the trust. Defendants concede that the trust also gave the co-trustees (and now gives the trustee) discretionary authority to use the trust's funds to make distributions of income and principal for the education, health, maintenance, and support of Ruth's descendants. Similarly, they maintain that Wealth Trust II provides that the trustee could make distributions from the trust for the education, health, maintenance, and support of Ruth's children but was not required to do so. Only after Ruth's death, they contend, does the trust require that the trustee "make distributions to each beneficiary of each separate trust."

Defendants have represented that no distributions were made to Diane from either trust during Maureen's life. The Court finds that, whether Diane made a discretionary distribution to herself following Maureen's death does nothing to corroborate Plaintiff's assertions that Maureen could have also received discretionary disbursements during her life, because of the discretionary nature of any distributions. But in arguing that the trusts' funds are limited, during Ruth's life, to the payment of insurance premiums and discretionary distributions by the co-trustees (and trustee), Defendants seemingly ignore the language contained in the "Rights of Withdrawal of Principal" section of both trusts, which discusses the descendants' right "to withdraw

from the trust estate portions of contributions made to the trust estate during [the year that the trust was executed and each succeeding calendar year during the lifetime of Ruth Ann Kiver]." To the extent that Defendants dispute any such entitlement, knowledge of whether any withdrawals have been made consistent with this provision – even if done subsequent to Maureen's death – would, indeed, tend to support Mr. Scott's allegation that Maureen could have accessed these trusts during her lifetime. After all, unlike the discretionary provisions, this section of both trusts seemingly grants Ruth's descendants an absolute right to withdraw from the trusts.

There are more efficient ways of discovering this information than the broad discovery that Plaintiff now seeks, however, and the Court, therefore, chooses not to order Defendants to provide specific information regarding the withdrawals and their amounts. That a withdrawal consistent with the provision was made is what is relevant. Not the number of any such distributions nor their amount. Indeed, the Court agrees with Defendants that any information regarding the amount of any withdrawal following Maureen's death is irrelevant, as damages in this case would have arisen, if ever, during Maureen's life. Specifically, if the trustee had made a withdrawal but failed to allow Maureen to make one as well. This is because both trusts state that the right is limited to living

descendants; it does not pass to the descendant's estate at death.

The Court, therefore, denies Plaintiff's motion to compel Defendants to answer interrogatory number 5 more fully, as the request relates to Wealth Trust I and Wealth Trust II.

> ### 2. *Milton S. Kiver Grantor Trust and Maureen K. Scott's Subtrust*

Plaintiff cites the following trust provisions in support of his argument that Maureen could have accessed the Milton S. Kiver Grantor Trust during her lifetime:

> Following Death of Grantor. Subject to Article V on the Contingent Marital Trust and the LPA share provisions, upon the death of [Milton S. Kiver], the trust estate, as then constituted, shall be divided into separate trusts of equal value, creating one trust for each child of [Milton S. Kiver] then living and one trust for the then living descendants, collectively, of each deceased child. Each separate trust created for the descendants of a deceased child of [Milton S. Kiver] shall be further divided into separate trusts, per stirpes. Each such trust shall be held, administered and distributed as a separate trust as hereinafter provided.

> . . . .

> Distributions of Income and Principal. The trustee may distribute to or use for the benefit of each beneficiary of a separate trust such portions or all of the income and principal of such trust as the trustee deems necessary or advisable for the education, health, maintenance and support of such beneficiary. In addition, the trustee (other than a beneficiary) may distribute to or use for the benefit of each beneficiary of a separate trust such portions or all of the income and principal of such trust as the trustee deems necessary or advisable for the best interests of such beneficiary.

8

Limited Power of Appointment. Upon the death of a beneficiary before complete distribution of his or her separate trust, such separate trust or the remainder thereof shall be distributed to or for the benefit of any one or more of such of [Milton S. Kiver's] then living or thereafter born descendants, the beneficiary's heirs at law, or such religious, scientific, charitable or educational organizations, in such proportions and upon such terms, conditions and trusts as such beneficiary may appoint by his or her will, specifically referring to the power hereby granted.

Because Maureen's separate trust is a product of the Milton S. Kiver Grantor Trust, both will be discussed together.

In response to Plaintiff's arguments, Defendants again maintain that Maureen had no distribution rights under the Milton S. Kiver Grantor Trust unless she survived Ruth, which she did not. They specifically contend that, upon Milton's death, a marital trust and contingent marital trust were formed and that "*after* Ruth died, monies in the Kiver estate would be distributed to Maureen and her sister, Diane Shah." At the time Maureen died, they argue, "no separate trusts had actually been formed and funded."

The Court is concerned about the inconsistencies between Defendants' representations and what actually transpired following Maureen's death. To be sure, in a letter to Rebecca E. Scott (Maureen's daughter) dated August 28, 2007, Defendant David B. Shiner represented that "Upon [Milton Kiver's] death, the Milton S. Kiver Grantor Trust was divided into two equal subtrusts; one for your mother and one for your aunt, Diane Shah . . . ." But in their response to the motion at issue, they

9

maintain that "Maureen had no right to any distributions prior to her death because no separate trusts had been actually formed and funded." Whether subtrusts were created and distributions made to Diane following Maureen's death is relevant to show that, contrary to Defendants' representation, Ruth's death was not a requisite for the formation of separate trusts and for distributions to be made from them. To be sure, though Ruth remains alive, at some point subtrusts were created for both Diane and Maureen from the Milton S. Kiver Grantor Trust, Maureen's subtrust was further divided into two additional subtrusts for her children, and distributions were made from the respective trusts to Diane and each of Maureen's descendants.

For reasons similar to those discussed *supra*, the relevant information is whether a distribution was made to Diane after Maureen's death – the amount of any distribution is irrelevant. And that distributions were, indeed, made is information that has already been disclosed by Defendants. Specifically, "the Milton S. Kiver Grantor Trust was divided one-half for Diane and one-quarter to each Sam and Rebecca Scott, the children of MAUREEN, and proper distributions were made." Consequently, Plaintiff's motion to compel as it relates to the Milton S. Kiver Grantor Trust and Maureen's resulting separate trust is denied.

### 3. *Ruth A. Kiver Grantor Trust*

In arguing that Maureen had the right during her lifetime to

receive distributions from the Ruth A. Kiver Grantor Trust,

Plaintiff relies on the following provisions:

> Distribution of Income. The trustee may distribute to or
> use for the benefit of [Ruth Ann Kiver's] descendants as
> shall be living from time to time, in equal or unequal
> amounts, such portions or all of the income from the
> trust estate as the trustee from time to time deems to be
> necessary or advisable for their respective education,
> health, maintenance and support. Any such income which
> is not so used or distributed by the trustee shall be
> accumulated and added to the principal of the trust
> estate at such time or times as the trustee deems
> advisable.

> Discretionary Distributions of Principal. The trustee
> may distribute to or use for the benefit of [Ruth Ann
> Kiver's] descendants as shall be living from time to
> time, in equal or unequal amounts, such portions or all
> of the remaining principal of the trust estate, including
> any insurance policy forming a part of the trust estate,
> as the trustee from time to time deems to be necessary or
> advisable for their respective education, health,
> maintenance and support.

Despite Defendants' objections, Plaintiff maintains that any

distributions to Diane subsequent to Maureen's death, is relevant

to his position.

The information sought by Plaintiff is irrelevant to the

case at bar. In light of the discretionary nature of any

distributions, knowledge of any made to Diane after Maureen's

death would reveal nothing as to whether Maureen could have

accessed them during her lifetime. The Court, therefore,

declines to order Defendants to respond further to interrogatory

number 5 regarding the Ruth A. Kiver Grantor Trust.

**B. Plaintiff's First Request to Produce**

Plaintiff argues that Defendants failed to properly respond to certain of his production requests. Because the requests are overbroad, privileged, and/or irrelevant, Defendants maintain, their responses are appropriate. The requests will be discussed in turn.

### 1. *Milton S. Kiver Living Trust, Milton S. Kiver Marital Trust, Milton S. Kiver Family Trust*[3]

In his first set of production requests, Plaintiff asked Defendants to produce:

> 30. Any and all documents relating to any payments or transfers of assets made to the [Milton S. Kiver] Living Trust by or on behalf of: (a) Diane; or (b) any trust for which Diane is a beneficiary.

> 31. Any and all correspondence relating to the [Milton S. Kiver] Living Trust exchanged between [Chuhak & Tecson] and any of the following: (a) Diane; (b) Maureen; (c) Minor; (d) Silverman; (e) Sam; (f) Becca; or (g) Ruth.

> 32. Any and all of the [Milton S. Kiver] Living Trust's tax returns and supporting documentation from 2005 through the present including, without limitation: (a) complete copies of all federal income tax returns and supporting schedules; (b) complete copies of all state income tax returns and supporting schedules; (c) complete copies of all estate tax returns and supporting schedules; and (d) complete copies of any other tax return filed by the [Milton S. Kiver] Living Trust.

> 33. Any and all documents relating to any payments or transfers of assets made to the [Milton S. Kiver] Marital Trust by or on behalf of: (a) Diane; or (b)

---

[3] Because the Marital Trust and Family Trust are products of the Living Trust, all three will be discussed together.

any trust for which You are a beneficiary.

34. Any and all correspondence relating to the [Milton S. Kiver] Martial Trust exchanged between [Chuhak & Tecson] and any of the following: (a) Diane; (b) Maureen; (c) Minor; (d) Silverman; (e) Sam; (f) Becca; or (g) Ruth.

35. Any and all of the [Milton S. Kiver] Marital Trust's tax returns and supporting documentation from 2005 through the present including, without limitation: (a) complete copies of all federal income tax returns and supporting schedules; (b) complete copies of all state income tax returns and supporting schedules; (c) complete copies of all estate tax returns and supporting schedules; and (d) complete copies of any other tax return filed by the [Milton S. Kiver] Marital Trust.

36. Any and all documents relating to any payments or transfers of assets made to the [Milton S. Kiver] Family Trust by or on behalf of: (a) Diane; or (b) any trust for which You are a beneficiary.

37. Any and all correspondence relating to the [Milton S. Kiver] Family Trust exchanged between [Chuhak & Tecson] and any of the following: (a) Diane; (b) Maureen; (c) Minor; (d) Silverman; (e) Sam; (f) Becca; or (g) Ruth.

38. Any and all of the [Milton S. Kiver] Family Trust's tax returns and supporting documentation from 2005 through the present including, without limitation: (a) complete copies of all federal income tax returns and supporting schedules; (b) complete copies of all state income tax returns and supporting schedules; (c) complete copies of all estate tax returns and supporting schedules; and (d) complete copies of any other tax return filed by the [Milton S. Kiver] Living Trust.

For each of these requests, Defendants objected on grounds that they are not "related to any claim or defense in [the] action and not reasonably calculated to lead to the discovery of admissible evidence."

Plaintiff, without more, alleges that because the requested information "may demonstrate distributions to Diane *since* MAUREEN'S death," he is "entitled to examine assets in the various trusts after Milton died to determine what MAUREEN could have accessed as alleged in paragraphs 55, 56 and 57 of the Amended Complaint." But the sections of the Amended Complaint on which Plaintiff relies deal only with the Ruth Ann Kiver Grantor Trust, the Ruth Ann Kiver Wealth Trust I, and the Ruth Ann Kiver Wealth Trust II. Not either of the three trusts about which he now seeks information. Nor is there anything currently before the Court that demonstrates that the three trusts at issue are related in any way to Ruth Ann Kiver's wealth or grantor trusts.

Further, though Plaintiff does reference the Milton S. Kiver Living Trust in the Amended Complaint, he does so only (as it relates to this case) in the context of a $275,000 loan from the trust that was made to LoDo Self-Storage, one of Maureen's businesses; Plaintiff alleges that, had Maureen known of her entitlement to other trust funds, she would not have had to borrow the money from the Milton S. Kiver Living Trust. Consequently, the Court is strained to understand the relevance of the extensive discovery Plaintiff now seeks, or how it is likely to lead to the discovery of admissible evidence. Similarly, discussion in the Amended Complaint of the Milton S. Kiver Marital Trust is limited to Plaintiff's contentions that Diane and Maureen borrowed money from the trust. Diane is not a

14

party to this litigation, and Plaintiff's claims that Maureen would not have had to borrow from the Milton S. Kiver Marital Trust had she known of her right to access the funds of other trusts do not support such sweeping discovery requests. And the Milton S. Kiver Family Trust is not even mentioned in the Amended Complaint. Perhaps this is why Plaintiff abandoned his arguments in his reply brief. Nevertheless, Plaintiff's motion to compel as it relates to requests 30, 31, 32, 33, 34, 35, 36, 37, and 38 is denied.

### 2. *Milton S. Kiver Non GST Exempt Family Trust, Milton S. Kiver GST Exempt Family Trust, Diane Shah Exempt Trust*

In requests 44, 45, 46, 47, and 48, Plaintiff requested that Defendants produce:

44. Any and all documents relating to the formation of the Milton S. Kiver Non GST Exempt Family Trust including, without limitation: (a) all trust agreements, whether draft or executed copies; (b) all amendments or restatements to trust agreements, whether draft or executed copies; (c) all correspondence; and (d) all other documents reflecting negotiations or discussions relating to the formation and terms of the Milton S. Kiver Non GST Exempt Family Trust.

45. Any and all documents relating to the operation and/or administration of the Milton S. Kiver Non GST Exempt Family Trust including, without limitation: (a) all documents relating to its assets or investments; (b) all documents relating to any income, interest or other revenue received by the trust; (c) all correspondence; (d) all audited and unaudited year-end financial statements, balance sheets, profit and loss statements and general ledgers; and (e) all documents reflecting the identity of its trustees, settlers and beneficiaries from 2005 through to

[sic] the present.

46. Any and all documents relating to the formation of the Milton S. Kiver GST Exempt Family Trust including, without limitation: (a) all trust agreements, whether draft or executed copies; (b) all amendments or restatements to trust agreements, whether draft or executed copies; (c) all correspondence; and (d) all other documents reflecting negotiations or discussions relating to the formation and terms of the Milton S. Kiver Non GST Exempt Family Trust.

47. Any and all documents relating to the operation and/or administration of the Milton S. Kiver GST Exempt Family Trust including, without limitation: (a) all documents relating to its assets or investments; (b) all documents relating to any income, interest or other revenue received by the trust; (c) all correspondence; (d) all audited and unaudited year-end financial statements, balance sheets, profit and loss statements and general ledgers; and (e) all documents reflecting the identity of its trustees, settlers and beneficiaries from 2005 through the present.

48. Any and all documents relating to the formation of Diane's Exempt Trust including, without limitation: (a) all trust agreements, whether draft or executed copies; (b) all amendments or restatements to trust agreements, whether draft or executed copies; (c) all correspondence; and (d) all other documents reflecting negotiations or discussions relating to the formation and terms of Diane's Exempt Trust.

Defendants again objected to the requests because, they alleged, they are neither related to any claim or defense in the pending matter nor reasonably calculated to lead to the discovery of admissible evidence.

Defendants argue that, because Plaintiff did not allege a claim arising from either the Milton S. Kiver Non GST Exempt Family Trust or the Milton S. Kiver GST Exempt Family Trust, he

16

is not entitled to the discovery he seeks. The Court agrees. Had Plaintiff asserted a claim based on those trusts, the information would certainly have been relevant, and thus, discoverable. But, for whatever reason, he did not. Initially, the Court was inclined to order Defendants to produce the documents notwithstanding Plaintiff's failure to allege claims based on those specific trusts. This is because the gravamen of Plaintiff's complaint is that he did not know of the existence of certain trusts. It would not have been a far stretch, then, that he was unaware of these. But the document on which the Court would have relied in granting Plaintiff's request for production of certain documents, was supplied to the Court by Plaintiff. Specifically, in a February 27, 2007 Memorandum to Defendant Stephen Margolin and Sheldon A. Silverman, Defendant David B. Shiner states, "The Milton S. Kiver Non GST Exempt Family Trust was funded with $153,133. The Milton S. Kiver GST Family Exempt Trust was funded with $432,408. Each of Diane and Maureen are beneficiaries of the Family Trust."

If Maureen, indeed, was a beneficiary and had made a claim that, as a result, she was entitled to distributions from the trusts, a stronger argument for discovery could have been made. But because Plaintiff failed to allege any such claim, and because of the very real possibility that Plaintiff made the decision not to do so based on information not presently before the Court, the Court decides against ordering Defendants to

produce responsive documents relating to the Milton S. Kiver Non GST Exempt Family Trust and the Milton S. Kiver GST Exempt Family Trust. Further, because Diane Shah is not a defendant in this case and the information sought not relevant to any claim asserted against the present Defendants, the Court will not order Defendants to produce the requested documents.

Plaintiff's motion to compel the production of documents responsive to requests 44, 45, 46, 47, and 48 is, therefore, denied.

### 3.   *Kiver Family Limited Partnership*

Request 50 asks Defendants to produce,

Any and all documents relating to the Kiver Family Limited Partnership including, without limitation: (a) all partnership agreements, whether draft or executed copies; (b) all correspondence; (c) all documents reflecting negotiations or discussions relating to the formation and dissolution of the Kiver Family Limited Partnership; (d) all documents relating to its assets or investments; (e) all documents relating to any income, interest or other revenue received by the entity; (f) all audited and unaudited year-end financial statement statements, balance sheets, profit and loss statements and general ledgers; and (g) all documents reflecting the identity of its general partners and their ownership interests.

Defendants believed the request to be irrelevant and failed to provide any responsive documents.

Plaintiff alleges that Ruth had agreed to make a distribution of a set amount to Maureen from the partnership but that Defendants failed to advise her of the planned distributions. As a result, he alleges, Defendants breached

their fiduciary duty to Maureen. The Court is able to dispose of this request in short order, as the district court has dismissed this claim with prejudice. The requested discovery, therefore, is not relevant to any of the live claims. The motion to compel a response to request 50 is denied.

### 4. *Diane Shah's Tax Returns*

In request number 57, Plaintiff asked Defendants to produce:

> Any and all of Diane's tax returns and supporting documentation including, without limitation: (a) complete copies of all federal income tax returns and supporting schedules; (b) complete copies of all state income tax returns and supporting schedules; and (c) complete copies of any other tax return filed by You.

Not surprisingly, Defendants did not provide the requested information.

This request is problematic in many regards, not the least of which is the fact that the information sought is not relevant to any of the claims alleged by Plaintiff against Defendants. Counsel could not have genuinely expected to be given access to this information in this case. The request for documents responsive to request number 57 is denied.

### 5. *Jasmine Limited's Documentation*

Request number 59 seeks from Defendants,

> Any and all documents relating to the formation, operation and or administration of Jasmine Limited including, without limitation: (a) all partnership agreements, whether draft or executed copies; (b) all correspondence; (c) all documents reflecting negotiations or discussions relating to the formation of Jasmine Limited; (d) all documents relating to its assets or

investments; (e) all documents relating to any income, interest or other revenue received by the entity; (f) all audited and unaudited year-end financial statement statements, balance sheets, profit and loss statements and general ledgers; and (g) all documents reflecting the identity of its general partners and their ownership interests in Jasmine Limited.

There is nothing before the Court to indicate what, exactly, Jasmine Limited is, let alone why the entity (and its documentation) is relevant to the ongoing litigation. Though Plaintiff asks the Court to order Defendants to produce responsive documents, he has not made even a minimal showing of why he is entitled to such. His motion to compel as it relates to request number 59 is denied.

### 6. *Subtrust Documentation*

Pursuant to request number 60, Defendants were to provide, "[a]ny and all documents not produced in response to Requests Nos. 21, 22, 23 and 24 that reflect the creation of the 'subtrusts' described in David B. Shiner's letter dated August 28, 2007." In response, Defendants stated that there were none.

Because Defendants assert that they fully responded to the request and as a result of Plaintiff's failure to argue otherwise, the Court denies Plaintiff's request for further documentation in response to request number 60.

### 7. *Billing Statements*

Plaintiff argues that Defendants failed to produce billing statements for services rendered once they began representing

Maureen. He contends that this information is imperative as "Plaintiff's Amended Complaint includes a request that Defendants be required to disgorge fees charged since the obvious conflict in their representation of all parties commenced in August 2005 . . . . [T]he trier of fact may request Defendants to return all fees received since they first began to represent MAUREEN." In response to Defendants' representation that they 1) were never asked for the statements and 2) had not sent bills to Maureen or Plaintiff, however, Plaintiff stated that "invoices demonstrating whether Defendants billed Plaintiff or Plaintiff's decedent are not what was being requested." In light of this statement, the Court is not exactly sure what Plaintiff seeks. Indeed, implicit in Plaintiff's statement that the trier of fact may seek to disgorge Defendants of fees received is that the statements are required as a means of ascertaining such fees.

Plaintiff goes on to say that "[w]hether or not [Maureen] was entitled to any distributions under any legal documents would be advice that she would be entitled to from these Defendants. They never gave her any such advice." Maybe, then, Plaintiff seeks statements of services rendered in an effort to show that Maureen was or was not given such advice. This, the Court will allow. Though Defendants maintain that they have never sent a bill to Plaintiff or Maureen, the Court believes that they must have received payment from some person or entity for the services provided to Maureen. It is highly unlikely that they provided

services gratis.  To the extent that statements were provided regarding services provided to Maureen and the documentation reflects advice given to Maureen, the Court orders Defendants to produce them.

**C.  Defendants' Metadata**

Plaintiff requests access to the metadata on Defendants' computers.  Defendants maintain that this is an extreme remedy and that it is not warranted in this case.  The Court agrees.

As an initial matter, the Court notes that this case is not one where the metadata is directly at issue.  Plaintiff concedes as much, but argues that it is necessary as a result of inconsistences in documents produced by Defendants.  The first being the absence of at least four documents from Defendants' discovery production.  Defendants challenge the number, instead asserting that only one document was not produced.  Based on the facts of this case, this hardly rises to a level sufficient to allow the Court to order access to the metadata.  Nor does the existence of the same document with two different dates, do so. Defendants' response regarding the autodate function is reasonable, and there is nothing currently before the Court that would cause it to doubt Defendants' representation.  Nor is there anything that would aid the Court in understanding the significance of the letter's date.  And it seems as though the letter of which Plaintiff complains, that was sent to Milton following his death, would actually aid Plaintiff in his case,

not hurt him. As would the conflicting letters regarding Maureen's entitlement to certain trust funds. Regardless, however, the Court will not allow Plaintiff access to Defendants' metadata, especially in light of the highly sensitive and likely proprietary information contained on the computers and the ongoing, related state proceedings. His request is, therefore, denied.

### Conclusion

For the reasons set forth above, Plaintiff's Motion to Compel Defendants to Answer Completely Interrogatory #5 of Plaintiff's First Set of Interrogatories and to Produce Materials Requested Under Paragraphs 30, 31, 32, 33, 34, 35, 36, 37, 38, 44, 45, 46, 47, 48, 50, 57, 59 and 60 of Plaintiff's First Request to Produce is granted in part and denied in part.

Date: March 23, 2011       E N T E R E D:

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT