**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MINOR M. SCOTT III, as personal representative for the ESTATE OF MAUREEN K. SCOTT, deceased,** ) ) ) ) | |
| **Plaintiff,** ) ) | No. 09 C 6858 |
| v. ) ) | Judge Ronald A. Guzmán |
| **CHUHAK & TECSON, P.C., STEPHEN M. MARGOLIN and DAVID SHINER,** ) ) ) ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has sued defendants for legal malpractice. The case is before the Court on defendants' motions to strike plaintiff's expert evidence and for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion to strike and grants the motion for summary judgment.

**Facts**

Maureen Scott is plaintiff's deceased wife. (Answer Am. Compl. ¶ 11.) Maureen and her sister Diane Shah, are the daughters of Milton, who is also deceased, and Ruth Kiver. (*Id.*) Defendants Margolin and Shiner are attorneys with defendant Chuhak & Tecson, an Illinois law firm that has done estate planning work for the Kivers since at least 1973. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 2-5; *see* Defs.' LR 56.1(a)(3) Stmt., Ex. 9, Amendment Number Ten Milton S. Kiver Living Trust Restatement of Trust Preamble.) Among the instruments they prepared for the Kivers are the Milton S. Kiver Grantor Trust ("MGT"), the Ruth A. Kiver Grantor Trust ("RGT), the Ruth A. Kiver

Wealth Trust ("RWT") and the Ruth A. Kiver Wealth Trust II ("RWT II").  (*See* Defs.' LR 56.1(a)(3) Stmt., Ex. 6, MGT Signature Page; *id.*, Ex. 7, RWT Signature Page; *id.*, Ex. 8, RWT II Signature Page; Am. Compl., Ex. 7, RGT Signature Page.)

In relevant part, the MGT documents state:  "Subject to Article V on the Contigent Marital Trust and the LPA Share provisions, upon [Milton's death] the trust estate, as then constituted, shall be divided into separate trusts of equal value . . . one . . . for each [of Milton's daughters] then living and one . . . for the then living descendants, collectively, of each deceased [daughter]." (Defs.' LR 56.1(a)(3) Stmt., Ex. 6, MGT § 6.)   The contingent marital trust provision states that:

> [If Ruth survives Milton and] any portion of the trust estate is finally determined to be includible in [Milton's] estate for Federal estate tax purposes, the trustee as of the date of [Milton's] death shall set aside out of the trust estate so includible in [Milton's] taxable estate, . . . as a separate trust for the benefit of [Ruth], the smallest pecuniary amount which, if allowed as a Federal estate tax marital deduction, would result in the least possible Federal estate tax being payable by reason of [Milton's] death, after taking into account transfers of any other property which qualify for a marital deduction.

(*Id.* § 5.)  The MGT documents name Diane as trustee, but state that each beneficiary of a separate trust shall become a co-trustee of that trust upon his/her thirtieth birthday. (*Id.* Preamble, § 12.4(c).) They also give the trustee discretion to "distribute to or use for the benefit of each beneficiary of a separate trust" some or all of the income and principal of the separate trust "as the trustee deems necessary or advisable for the education, health, maintenance and support" or "the best interests" of the beneficiary.  (*Id.* § 7.1.)  In addition, the documents state that if a separate trust beneficiary dies before his/her trust is completely distributed, "such separate trust or the remainder thereof shall be distributed to or for the benefit of any . . . of . . . the beneficiary's heirs at law . . . in such proportions and upon such terms, conditions and trusts as such beneficiary may appoint by his or her will."  (*Id.* § 7.2.)

2

The RGT documents name Diane as trustee and give her the discretion, during Ruth's lifetime, "to distribute to or use for the benefit of [Ruth's living] descendants" some or all of the trust principal and income as she deems "necessary or advisable for their . . . education, health, maintenance and support." (Am. Compl., Ex. 7, RGT Preamble, §§ 4.1-4.2.)

The RWT documents name Milton as trustee and Maureen and Diane as successors. (Def.'s LR 56.1(a)(3) Stmt., Ex. 7, RWT Preamble, § 11.4(a).) They also provide that during Ruth's lifetime, the trustee "may . . . distribute to or use for the benefit of . . . [Ruth's then-living] descendants" some or all of the trust income or principal as the trustee "deems advisable for their respective education, health, maintenance and support." (*Id.* §§ 5.1-5.2.)

The RWT II documents name Diane as trustee and state that she may, during Ruth's lifetime, "distribute to or use for the benefit of . . . [Ruth's then-living] descendants" some or all of the trust income or principal as the trustee "deems advisable for their respective education, health, maintenance and support." (Def.'s LR 56.1(a)(3) Stmt., Ex. 8, RWT II §§ 4.1-4.2.)

Viewed favorably to plaintiff, the record shows that defendants represented Maureen for estate planning from October 2004 until her death in 2007. (*See* Pl.'s Ex. E, Defs.' Resps. Pl.'s First Req. Admit Facts & Genuineness Documents No. 19; Pl.'s Ex. O, Letter from Margolin to Maureen (Oct. 28, 2004); Answer Am. Compl. ¶ 61.) During that time, defendants also represented Diane, both individually and as trustee of the MGT, RGT, RWT and RWT II. (Answer Am. Compl. ¶ 63; Pl.'s Ex. J, Trost Report 18.)

On July 21, 2005, Milton died. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 6.)

On August 16, 2005, Ruth, Diane, Maureen and plaintiff attended a meeting with defendants concerning Milton's estate. (*Id.* ¶ 10.) During the meeting, defendants gave them an eighteen-page

3

chart summarizing "the significant features" of the Kivers' estate plans. (*See* Pl.'s Ex. M, Kiver – Summary of the Estate Plan as of July 2005 1.) Among other things, the chart says: (1) the MGT (a) trustee has the discretion, during Milton's lifetime, to distribute the trust's principal and income for the beneficiaries' education, health, maintenance and support and, (b) upon Milton's death, the trust estate will be used to create a marital trust and, if tax concerns so militate, a contingent marital trust for Ruth, and upon Ruth's death, any contingent marital trust will be distributed as appointed in her will and the remaining trust assets will be "[d]ivide[d] . . . into separate trusts for the benefit of each of the [Kivers' daughters] and one for the then living descendants of each deceased [daughter]"; (2) the RGT trustee has the discretion, during Ruth's lifetime, to distribute the trust's principal and income for the beneficiaries' education, health, maintenance and support; (3) the RWT trustee has the discretion, during Ruth's lifetime, to distribute the trust's principal and income for the education, health, maintenance and support of the Kivers' descendants; and (4) the trustee of the RWT II has the discretion, during Ruth's lifetime, to distribute the trust's principal and income for the education, health, maintenance and support of the Kivers' descendants. (*Id.* at 5, 7, 14-15.)

On March 9, 2007, Maureen signed an amended will that defendants had prepared. (Answer Am. Compl. ¶ 61.) Among other things, it states: "I give all the rest . . . of my property and estate, . . . excluding any property over which I may at any time have a power of appointment" to plaintiff. (Am. Compl., Ex. 11, Maureen's Am. Will 6.) Her prior will, which had been prepared by a non-party nearly twenty years earlier, did not contain an exclusion for property over which she had the power of appointment. (*See generally id.*, Ex. 10, Maureen's Will.)

On March 23, 2007, Maureen died. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 8.) Following her death, plaintiff's counsel sent several letters to defendants requesting information and documents relating

to her estate, including those pertaining to any trusts of which she was a beneficiary. (*See* Pl.'s Ex. W, Letters from Rosenbaum to Margolin (Apr. 25, 2007, June 6, 2007, July 9, 2007 & Aug. 29, 2007); *id.*, Letter from Rosenbaum to Shiner (Oct. 15, 2007).)

In response to these requests, on five different occasions between May 10, and October 25, 2007, defendants gave plaintiff various documents and information about the Kiver family assets. (*See id.*, Letters from Margolin to Rosenbaum (May 10, 2007 & June 19, 2007); *id.*, Letters from Shiner to Rosenbaum (July 19, 2007, Sept. 26, 2007 & Oct. 25, 2007).) Defendants did not, however, mention the MGT until October and, even then, did not enclose the MGT documents with their letter:

> [P]lease be advised that Maureen Scott was a beneficiary of both the Milton S. Kiver Living Trust Dated February 9, 1973 and the Milton S. Kiver Grantor Trust dated August 20, 2003. Both agreements provided that during Maureen's life, the trustee was authorized to distribute income and principal to Maureen based upon an ascertainable standard. Upon Maureen's death, her interest in both trusts terminated. In addition, Maureen had no power over either trust that would cause any part of either trust to be included in Maureen's gross estate for purposes of the federal estate tax.

(*Id.*, Letter from Shiner to Rosenbaum (Oct. 25, 2007).)

Viewed favorably to plaintiff, the record shows that defendants never gave the MGT documents to Maureen or plaintiff. (Pl.'s Ex. G, Scott Dep. at 211-15; *see generally* Pl.'s Ex. W, Letters from Margolin to Rosenbaum (May 10, 2007 & June 19, 2007); *id.*, Letters from Shiner to Rosenbaum (July 19, 2007, Sept. 26, 2007 & Oct. 25, 2007).) They did, however, give the documents to their daughter, Rebecca, in November 2007, who sent them to plaintiff. (*See* Pl.'s Ex. R, Email from Rebecca to Scott (Nov. 13, 2007); *id.*, Email from Shiner to Rebecca (Nov. 7, 2007).)

Plaintiff asserts that defendants committed malpractice by failing to: (1) tell Maureen about the terms of the MGT, RGT, RWT and RWT II; and (2) obtain from her a waiver of the conflict

5

inherent in their simultaneous representation of Maureen and Diane, who was the trustee and another beneficiary of the MGT, RGT, RWT and RWT II.[1]

**Discussion**

To prevail on a summary judgment motion, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Defendants argue that plaintiff's claims are untimely because he admitted in his deposition that he knew about the alleged injury to Maureen more than two years before he filed this suit. *See* 735 Ill. Comp. Stat. 5/13-214.3(b) ("An action for damages based on tort, contract, or otherwise . . . against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought."). In fact, plaintiff testified that he first discussed possible claims against defendants "[s]ometime after [he] got the

---

[1] The Court dismissed without prejudice from the first complaint plaintiff's claims based on defendants' alleged failure to tell Maureen about the RGT, RWT and RWT II because he had not sufficiently alleged that defendants' conduct proximately caused Maureen damages. (*See* 7/9/10 Mem. Op. & Order 6.) Plaintiff made modifications, albeit minor ones, to these claims and included them in the amended complaint. Because defendants did not move to dismiss the amended complaint, the Court addresses the amended claims here.

[MGT documents]" in November 2007. (Pl.'s Ex. G, Scott Dep. at 119, 124-25, 250-51.) That testimony is sufficient to raise a triable issue of fact as to whether this suit, which was filed on October 30, 2009, is timely.

To defeat defendants' motion on the merits of his claims, plaintiff must show that defendants owed Maureen a duty of care arising from an attorney-client relationship, they breached that duty and the breach proximately caused Maureen to suffer damages. *Fox v. Seiden*, 887 N.E.2d 736, 742 (Ill. App. Ct. 2008); *see In re Winthrop*, 848 N.E.2d 961, 972-73 (Ill. 2006) (stating that the law imposes on a lawyer a duty of "undivided fidelity" to the client once the attorney-client relationship has been established (quotation omitted)); *see also Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004) ("An attorney's throwing one client to the wolves to save the other is malpractice."). Viewed favorably to plaintiff, the record suggests that Maureen was represented by defendants from October 2004 until her death in March 2007. (*See* Pl.'s Ex. O, Letter from Margolin to Maureen (Oct. 28, 2004); Answer Am. Compl. ¶ 61.) Thus, the record suggests that defendants had a duty of care to Maureen that arose from an attorney-client relationship.

Plaintiff also contends that there is evidence of breach – the report of Robert A. Merrick, an expert in legal ethics.[2] *See Barth v. Reagan*, 564 N.E.2d 1196, 1200 (Ill. 1990) ("[T]he standard of care against which the attorney defendant's conduct will be measured must generally be established through expert testimony."). Defendants argue that Merrick's evidence is inadmissible and should be stricken.

---

[2]Defendants do not contest that Robert Merrick is an expert in this field.

To be admissible, an expert's opinions must be based on the application of reliable principles to sufficient facts and disclosed in a report that explains the basis for, and facts underlying, them. Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(B). Defendants contend that Merrick's evidence does not satisfy these criteria because: (1) he opines that defendants violated the Illinois Rules of Professional Conduct, not a common-law duty of care; and (2) his opinions are based on facts that are refuted by the record.

The Court disagrees with the first contention. Merrick states that defendants "violated the standard of care . . . *reflected* in Rules 1.4 and 1.7 of the Illinois Rules of Professional Conduct," not the rules themselves, a statement that is wholly consistent with Illinois law. (Mot. Strike Report & Bar Op. Test. Robert A. Merrick Jr., Ex. 1, Merrick Report 2 (emphasis added)); *Rogers v. Robson, Masters, Ryan, Brumund & Belom,* 392 N.E.2d 1365, 1371 (Ill. App. Ct. 1979) ("[W]e reject any suggestion that ethical standards are not relevant" to legal malpractice claims), *aff'd*, 407 N.E.2d 47 (Ill. 1980); *Nagy v. Beckley*, 578 N.E.2d 1132, 1138 (Ill. App. Ct. 1991) (noting that the rules of professional conduct embody the common law duties that arise from the attorney-client relationship). Rules 1.4 and 1.7, which require a lawyer to obtain informed consent from a client when "there is a significant risk that the [lawyer's] representation of [the client] will be materially limited by the lawyer's responsibilities to another client," are the embodiment of the duty of "undivided fidelity" that lawyers, as a matter of law, owe to their clients. *See* Ill. Rules Prof'l Conduct 1.4(a)(1), 1.7(a)(2), (2010); *id.* 1.0(e) (defining "informed consent"); *In re Winthrop*, 848 N.E.2d at 972-73 (quotation omitted). This is the duty Merrick contends defendants violated.

Defendants also argue that Merrick's opinions are infirm because he relies "on allegations" not "actual facts." (Defs.' Mot. Strike Report & Bar Op. Test. Robert A. Merrick Jr. 5.) The Court

8

agrees that an expert opinion cannot be based on facts that are contradicted by undisputed evidence. He may, however, rely on his client's version of any disputed facts:

> [Federal Rule of Evidence 702] requires that expert testimony be based on sufficient underlying "facts or data.". . . The language "facts or data" is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence.
>
> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the [Rule] on " sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

*See* Fed. R. Evid. 702, advisory committee's note 2000 amendments (citations omitted).

Merrick does both. His opinion that defendants breached their duty to Maureen by failing to tell her about her rights under the RGT, RWT and RWT II is based on allegations plaintiff made to that effect in the amended complaint. (*See* Defs.' Mot. Strike Report & Bar Op. Test. Robert A. Merrick Jr., Ex. 1, Merrick Report 2-3.) However, plaintiff now admits facts that refute those allegations, including that: (1) defendants met with Maureen and other Kiver family members in August 2005 to discuss Milton's estate; (2) during the meeting, they gave Maureen an eighteen-page summary of the Kivers' estate plans; (3) the summary (a) identifies the RGT and explains that the trustee can, during Ruth's lifetime, make discretionary distributions of income and principal "for the beneficiaries [sic] education, health, maintenance and support," (b) identifies the RWT and the RWT II, explains that the trustee has the same discretionary distribution power as set forth in the RGT, and states that each trust gives the Kiver descendants "Crummey" withdrawal power, *i.e.*, the right to withdraw annually a portion[3] of any contributions made to the trust during the year up to the

---

[3] The withdrawal portion under the RWT is "determined by dividing the amount of any contributions made to the trust estate during the calendar year by the number of persons entitled to make a withdrawal." (Defs.' LR 56.1(a)(3) Stmt., Ex. 8, RWT § 5.3.) The withdrawal portion under the RWT II is "determined by dividing the amount of any contributions made to the trust

amount then-excluded from the federal gift tax. (Pl.'s Ex. M, Kiver – Summary of the Estate Plan as of July 2005 7, 14-16; Am. Compl., Ex. 7, RGT §§ 4.1-4.2; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 10; *see* Defs.' LR 56.1(a) Stmt., Ex. 8, RWT §§ 5.1-5.2; *id.*, Ex. 9, RWT II, §§ 4.1-4.2); *see generally Crummey v. Comm'r*, 397 F.2d 82 (9th Cir. 1968) (creating the eponymous doctrine that certain trust withdrawals are tax exempt). Because the undisputed evidence establishes that defendants told Maureen about her rights under the RGT, RWT and RWT II, Merrick's opinions that they breached their duty to her by failing to do so are not "based upon sufficient facts," as required by Federal Rule of Evidence 702. Thus, the Court strikes those opinions.

The situation is different for Merrick's opinions that defendants breached their duty to Maureen by failing to tell her about the terms of the MGT and obtain her informed consent to their simultaneous representation of Diane. Though the MGT is listed in the Kiver estate plan summary, the chart says the trust will be divided into separate trusts for the Kivers' descendants only after both Milton and Ruth die. (Pl.'s Ex. M, Kiver – Summary of the Estate Plan as of July 2005 5.) The MGT documents, however, state that separate trusts will be created upon Milton's death, subject to the provisions regarding a contingent marital trust, even if Ruth survives him. (Defs.' LR 56.1(a)(3) Stmt., Ex. 6, MGT §§ 5, 6.) Merrick assumed that defendants never told Maureen about the actual terms of the MGT or obtained her informed consent to their simultaneous representation of Diane, assumptions that are supported by: (1) the estate plan summary; (2) plaintiff's testimony that neither defendants nor Diane gave the MGT trust documents to Maureen or told her about its actual distribution terms and defendants did not seek or obtain Maureen's informed consent; (3) plaintiff's

---

estate during the calendar year" and "[a]ny excess unutilized withdrawals of any Withdrawal Beneficiary" by "the number of persons entitled to make a withdrawal." (*Id.*, Ex. 9, RWT II § 4.3.)

repeated requests for information relating to Maureen's estate starting in May 2007 and defendants' failure to mention the MGT until October 2007; (4) plaintiff's August 29, 2007 explicit request that defendants "forward [to him] a copy of the [MGT]" and defendants' failure to do so; (5) plaintiff's October 15, 2007 letter stating that he is "still awaiting information [previously requested], specifically a copy of the [MGT]" and defendants' failure to provide it; (6) the undisputed fact that defendants prepared Maureen's estate plan at the same time that they represented Diane, who is also an MGT beneficiary, both individually and in her capacity as trustee of the MGT; (7) the statements by defendants' expert, Eileen Trost, that (a) an attorney who represents both the fiduciaries and beneficiaries of a trust has the duty to "insure that the trust beneficiaries are provided, in substance, with . . . sufficient information to supervise the conduct of the trustees and to enforce their rights under the trust" and (b) "[m]aterial limitations to the common representation [of trustees and trust beneficiaries] would certainly arise if the trustees were not being open with the beneficiaries about the trust administration." (Pl.'s Ex. G, Scott Dep. at 199-205, 211-15; Pl.'s Ex. H, Scott Aff. ¶¶ 6-16; Pl.'s Ex. J, Trost Report 10, 19; Pl.'s Ex. W, Letters from Rosenbaum to Margolin (Apr. 25, 2007, June 6, 2007, July 9, 2007 & Aug. 29, 2007); *id.*, Letter from Rosenbaum to Shiner (Oct. 15, 2007); *id.*, Letter from Shiner to Rosenbaum (Oct. 25, 2007).) Because the record, viewed favorably to plaintiff, supports' Merrick's assumptions that neither defendants nor Diane told Maureen about the MGT's terms and defendants did not obtain Maureen's informed consent to their simultaneous representation of Diane, individually and as trustee of the MGT, his conclusion that defendants' breached their duty to Maureen in these respects stands.

In short, Merrick's report is sufficient to create a triable issue as to whether defendants breached their duty to Maureen by failing to tell her about the terms of the MGT and obtain her

11

informed consent. Because there is no foundation for Merrick's other opinions and no other evidence to suggest that defendants breached their duty to Maureen by concealing the terms of the RGT, RWT and RWT II from her, the Court grants defendants' motion for summary judgment on those claims.[4]

That is not the end of the analysis, however, for the MGT and informed consent claims, which survive defendants' motion only if the record suggests that defendants' breach proximately caused Maureen damage. *See Fox*, 887 N.E.2d at 742. It does not. Absent defendants' alleged breach, Maureen would have been told that the MGT actually requires: (1) that separate trusts be created for the Kivers' descendants upon Milton's death, even if Ruth survives him; (2) the provision requiring creation of separate trusts is "[s]ubject to" the contingent marital trust provision; and (3) the contingent marital trust provisions states that such a trust will be created only if "any portion of the [MGT] estate is finally determined to be includible in [Milton's] estate for Federal estate tax purposes." (Defs.' LR 56.1(a)(3) Stmt., Ex. 6, MGT §§ 5, 6.) Thus, Maureen would have known that the true terms of the MGT make a final determination of Milton's federal estate tax liability a condition precedent to the creation of the separate trusts. *See Espevik v. Kaye*, 660 N.E.2d 1309, 1313 (Ill. App. Ct. 1996) (stating that "it is the duty of the trial judge to interpret [a trust] agreement" and that, absent ambiguity, a court must determine the intent of a trust "solely by reference to [its] plain language"). It is undisputed that Milton's federal tax liability was not finally determined until May 23, 2007, two months after Maureen died. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 7-8; *see* Defs.' LR 56.1(a)(3) Stmt., Ex. 14, Estate Tax Closing Document.) Given the undisputed

---

[4]Even if expert evidence were not required, plaintiff's admissions with respect to the RGT, RWT, RWT II would doom these claims because the admissions refute the premise of the claims, *i.e.*, that defendants failed to tell Maureen about the trusts' terms.

timing of events, defendants were not required to create a separate trust for Maureen before she died. Thus, she could not have obtained from, or appointed by will, the assets of such a trust, even if she had known about the MGT's true terms. Because plaintiff has not created a triable issue as to whether defendants' alleged breach of their duty to Maureen proximately caused her to suffer damages, the Court grants defendants' motion for summary judgment on the MGT and informed consent claims.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to strike the expert report and testimony of Robert A. Merrick [doc. 74], finds that there is no genuine issue of material fact on the claims plaintiff asserts against defendants and defendants are entitled to judgment as a matter of law and grants defendants' motion for summary judgment [doc. 75]. This case is terminated.

**SO ORDERED.**                                                      **ENTERED: September 26, 2011**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**